## UNITED STATES BANKRUPTCY COURT
### MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

IN RE:                                         Case No. 8:15-bk-12505-CPM

KATHLEEN SUSAN GLENN AKA          Chapter 7
KATHLEEN S. ARTHUR,

       Debtor.

_____/

### WELLS FARGO BANK, N.A.'S
### MOTION FOR RELIEF FROM AUTOMATIC STAY
### TO ENFORCE FINAL JUDGMENT OF FORECLOSURE

---

**NOTICE OF OPPORTUNITY TO OBJECT AND FOR HEARING**

**Pursuant to Local Rule 2002-4, the Court will consider this motion, objection, or other matter without further notice or hearing unless a party in interest files a response within 21 days from the date set forth on the proof of service attached to this paper plus an additional three days for service. If you object to the relief requested in this paper, you must file your response with the Clerk of the Court at 801 N. Florida Avenue, Suite 727, Tampa, FL 33602-3899, and serve a copy on the movant's attorney, Wanda D. Murray, at Aldridge | Pite LLP, Fifteen Piedmont Center, 3575 Piedmont Road, N.E., Suite 500, Atlanta, GA 30305 and any other appropriate persons within the time allowed.**

**If you file and serve a response within the time permitted, the Court may schedule and notify you of a hearing, or the Court may consider the response and may grant or deny the relief requested without a hearing. If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, will proceed to consider the paper without further notice or hearing, and may grant the relief requested.**

---

     Wells Fargo Bank, N.A. ("Movant"), by and through undersigned counsel, files this *Motion for Relief from the Automatic Stay to Enforce Final Judgment of Foreclosure*, and in support states as follows:

     1.     The Court has jurisdiction over this matter pursuant to 11 U.S.C. §362, Rule 4001(a) of the Federal Rules of Bankruptcy Procedure, and the various other applicable provisions of the United States Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and the laws of the United States of America.

2.      On December 17, 2015, Debtor filed a voluntary petition for relief pursuant to Chapter 13 of the United States Bankruptcy Code.  Thereafter, on June 7, 2016 this case was converted to a Chapter 7 proceeding.

3.      Debtor owns certain real property located at 1455 Whisperwind Lane, Oldsmar, Florida 34677 (the "Property") in Pinellas County, Florida, legally described as:

**LOT 20, GREENHAVEN UNTI-FOUR, ACCORDING TO THE MAP OR PLAT THEREOF, AS RECORDED IN PLAT BOOK 104, PAGE 13 THROUGH 15 INCLUSIVE, OF THE PUBLIC RECORDS OF PINELLAS COUNTY, FLORIDA.**

**4.**      Movant commenced a foreclosure action in the Circuit Court for the 6th Judicial Circuit in and for Pinellas County, Florida, which ultimately resulted in the entry of a Uniform Final Judgment against Debtor on July 23, 2015 in the amount of $230,861.11 with regards to the subject property. A true and correct copy of the Uniform Final Judgment is attached hereto as **Motion Exhibit "A."**

5.      The Property has not been claimed exempt by Debtor. Additionally, the Property has not been abandoned by the Trustee. Moreover, according to the Statement of Intention, the Property was surrendered.

6.      The estimated value of the property is $342,965.00. This valuation is based on the fair market value as determined by the Pinellas County Property Appraiser. See Pinellas County Property Appraisal attached as **Motion Exhibit "B."**

7.      Movant's security interest in the Property is being significantly jeopardized by Debtor's failure to make regular payments under the subject loan documents while Movant is prohibited from pursuing lawful remedies to protect such security interest.

8.      Movant respectfully requests that the Court grant it relief from the automatic stay in this case pursuant to 11 U.S.C. §362(d)(1), for cause, namely the lack of adequate protection to Movant for its security interest in the Property. The value of the collateral is insufficient in and of itself to provide adequate protection to Movant, which the Bankruptcy Code requires to be provided.

9.      Movant further requests that the Court Order entered pursuant to the instant Motion provide that all communications sent by Movant in connection with proceeding against the property including, but not limited to, notices required by state law and communications to offer and provide information with regard to a potential Forbearance Agreement, Loan

Modification, Refinance Agreement, Loss Mitigation Agreement, or other Loan Workout, be sent directly to Debtor.

10.     Pursuant to 11 U.S.C. §362(e), Movant hereby requests that in the event a hearing is necessary, that said hearing be held within thirty (30) days.

11.     Movant respectfully requests that the Court waive the fourteen (14) day stay of the Order Granting Relief pursuant to Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure, so that Movant can pursue its in rem remedies without further delay.

**WHEREFORE**, Movant respectfully requests that the automatic stay be lifted so that Movant may be permitted to protect its security interest in Debtor's property outside of the bankruptcy forum, that in the event that a hearing is necessary on this Motion that it be held within thirty (30) days, that the Court waive the provisions of Rules 4001(a)(3) and for such further relief as the Court may deem just and proper.

Respectfully Submitted:

/s/ *Wanda D. Murray*

Wanda D. Murray, Bar No.: 566381
Attorney for Movant
Aldridge Pite, LLP
Fifteen Piedmont Center
3575 Piedmont Road, N.E., Suite 500
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (888) 873-6147
Email: WMurray@aldridgepite.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing Motion for Relief from the Automatic Stay was served electronically or via U.S. Mail, first-class postage prepaid, to:

**DEBTOR ATTORNEY**
**(via electronic notice)**

Steven M Fishman
steve.fishman@verizon.net

**DEBTOR**

Kathleen Susan Glenn
1455 Whisper Wind Lane
Oldsmar, FL 34677

**TRUSTEE**
**(via electronic notice)**

Traci K. Stevenson
tracikstevenson@gmail.com

**UNITED STATES TRUSTEE**
**(via electronic notice)**

Office of the U.S. Trustee
USTPRegion21.TP.ECF@USDOJ.GOV

Dated: August 1, 2016

/s/ *Wanda D. Murray*
Wanda D. Murray, Bar No.: 566381
Attorney for Movant
Aldridge Pite, LLP
Fifteen Piedmont Center
3575 Piedmont Road, N.E., Suite 500
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (888) 873-6147
Email: WMurray@aldridgepite.com

## UNITED STATES BANKRUPTCY COURT
### MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

IN RE:                                          Case No. 8:15-bk-12505-CPM
                                                Chapter 7

KATHLEEN SUSAN GLENN AKA
KATHLEEN S. ARTHUR,

      Debtor.

_____/

### AFFIDAVIT IN SUPPORT OF
### MOTION FOR RELIEF FROM AUTOMATIC STAY
### TO ENFORCE FINAL JUDGMENT OF FORECLOSURE


STATE OF
COUNTY OF

      Erika Anthony, being duly sworn, deposes and says:

    1.    I am a/an Vice President Loan Documentation of Wells Fargo Bank, N.A. ("Wells Fargo") and am authorized to sign this affidavit on behalf of Wells Fargo. This affidavit is provided in support of the Motion For Relief From Automatic Stay To Enforce Final Judgment Of Foreclosure (the "Motion") filed contemporaneously herewith.

    2.    As part of my job responsibilities for Wells Fargo, I have personal knowledge of and am familiar with the types of records maintained by Wells Fargo in connection with the account that is the subject of the Motion (the "Account") and the procedures for creating those types of records. I have access to and have reviewed the books, records and files of Wells Fargo that pertain to the Account and extensions of credit given to Debtor concerning the property securing such Account.

    3.    The information in this affidavit is taken from Wells Fargo's business records regarding the Account. The records are: (a) made at or near the time of the occurrence of the matters recorded by persons with personal knowledge of the information in the business record, or from information transmitted by persons with personal knowledge; and (b) kept in the course

of Wells Fargo's regularly conducted business activities. It is the regular practice of Wells Fargo to create and maintain such records.

4.      Randall Arthur and Kathleen Arthur (Collectively the "Borrowers") have executed and delivered or are otherwise obligated with respect to the attached promissory note, (the "Debt Agreement"). Pursuant to the attached Mortgage (the "Mortgage"), all obligations of the Borrowers under and with respect to the Debt Agreement and the Mortgage are secured by the property referenced in the Motion.

5.      Attached hereto as Declaration Exhibits A and B are true and correct copies of the Debt Agreement and the Mortgage associated with the subject Account.

6.      A final judgment of foreclosure has been entered with respect to the Property in favor of Movant. A true and correct copy of the final judgment is attached hereto as Exhibit C.

7.  .    As of the petition date, the Final Judgment amount is $230,861.11 with interest accruing at the rate of 4.75%.

8.

**FURTHER AFFIANT SAYETH NAUGHT.**

Executed this 15th day of July, 2016

_____
Erika Anthony
Vice President Loan Documentation
Wells Fargo Bank, N.A

STATE OF: South Carolina
COUNTY OF: York

Sworn/affirmed to and subscribed before me on this 15th day of July, 2016. Personally known [ ] or produced identification [ x].
Type of identification produced Driver's License.

_____
(Signature of Notary Public)
My commission expires 10/16/2017
Notary seal



DORIS R PHILLIPS
Notary Public - South Carolina
My Commission Expires
October 16, 2017

WORLD SAVINGS BANK, FSB

# ADJUSTABLE RATE MORTGAGE NOTE

### BIWEEKLY PAYMENT

### COST OF FUNDS INDEX

### INITIAL    4  WEEK INTEREST MODIFICATION PERIOD

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, MY BIWEEKLY PAYMENT AND MY UNPAID PRINCIPAL BALANCE. MY BIWEEKLY PAYMENT INCREASES, MY INTEREST RATE INCREASES AND MY PRINCIPAL BALANCE INCREASES ARE LIMITED. THIS NOTE IS SECURED BY A SECURITY INSTRUMENT OF THE SAME DATE.**

DATE:    **JUNE 14, 2002**

BORROWER(S):    **RANDALL ARTHUR AND KATHLEEN ARTHUR, HUSBAND AND WIFE**

sometimes called "Borrower" and sometimes simply called "I" or "me."

PROPERTY ADDRESS:    **1455 WHISPERWIND LANE
OLDSMAR, FL  34677**

**1. BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. **$200,000.00 * * * * *** called "Principal," plus interest, to the order of the Lender. The Lender is **WORLD SAVINGS BANK, FSB, * * * * * * * * * * * * * * * * * * * * * * * * ITS SUCCESSORS AND/OR ASSIGNEES**, or anyone to whom this Note is transferred.

**2. INTEREST RATE MODIFICATION PERIOD**
This Note contains a "Modification Period." The Modification Period begins 2 weeks before the date of my first biweekly payment, as specified in Section 4(A) of this Note and continues until **AUGUST 05, 2002.**

Beginning on the date that the loan funds are first disbursed to me and continuing up to, but not including, the first day of the modification period, I will pay interest at a yearly rate of **6.223%.**

During this Modification Period, I will pay interest at the fixed yearly rate of **3.950% * *** . After the Modification Period, I will pay interest as described in Section 3 of this Note.

**3. INTEREST**
**(A)  Interest Rate**
Interest will be charged on unpaid Principal until the full amount of Principal has been paid. The interest rate I will pay may change as described in this Section 3. Interest will be charged on the basis of a 364-day year, divided into 26 segments of two weeks each.

The interest rate required by this Section 3 is the rate I will pay both before and after any default described in Section 8(B) of this Note.

**(B) Interest Change Dates**
The interest rate I will pay may change on the **5TH**  day of **AUGUST, 2002 * *** and on every other Monday thereafter. Each date on which my interest rate could change is called an "Interest Change Date." The new rate of interest will become effective on each Interest Change Date.

Declaration Exhibit A

**(C)    Interest Rate Limit**
My lifetime maximum interest rate limit is **11.950%,** * called "Lifetime Rate Cap."

**(D)    Index**
Beginning with the first Interest Change Date, my interest rate will be based on an "Index." The Index is the monthly weighted average cost of savings, borrowings and advances of members of the Federal Home Loan Bank of San Francisco (the "Bank") as made available by the Bank (the "Cost of Funds Index," or "COFI"). The most recent Index figure available on each Interest Change Date is called the "Current Index."

**(E)    Calculation of Interest Rate Changes**
Lender will calculate my new interest rate by adding **3.500** * percentage points, called the "Margin," to the Current Index. Subject to the limit stated in Section 3(C) above, the result of this calculation will be my new "Interest Rate" until the next Interest Change Date.

If Lender fails to utilize the entire interest rate increase to which it is entitled under this Note on any Interest Change Date by failing to add all or part of the allowable Margin to the Current Index, then Lender may add any such allowable Margin to the Current Index on any future Interest Change Date. Lender may not, at a later date, carryover or add interest to which it is not entitled under this Note on any Interest Change Date.

**(F)    Alternative Index**
If the Index or any Index previously substituted under this Section 3(F) is no longer available, or is otherwise unpublished, or at Lender's sole discretion, is determined to be substantially recalculated, the Lender may choose a new Index. The Lender will give me notice of its choice.

**4. PAYMENTS**
**(A)    Time and Place of Payments**
I will pay Principal and interest by making payments every two weeks.

I will make my first biweekly payment on **JULY 22, 2002** * * * * and every other Monday thereafter. I will make these biweekly payments until I have paid (i) all the Principal and interest; and (ii) any other charges described below that I may owe under this Note; and (iii) any charges that may be due under the Security Instrument. If, on **JULY 08, 2032** * * *, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will maintain a deposit account with Lender, or with a bank or savings and loan which has been approved by Lender, and keep sufficient funds in such deposit account to allow Lender to automatically withdraw my biweekly payment on each of the biweekly payment dates stated above. The sole purpose of the deposit account is to ensure payment of the biweekly payments on the due-date of each payment and I instruct and charge Lender to withdraw the amount of each biweekly payment from the deposit account on each due date without any further instructions from me.

**(B)    Amount of My Initial Biweekly Payments**
Each of my initial biweekly payments will be in the amount of U.S. **$474.54.** * * * This amount will change as described in Sections 4(C) and 4(D) below.

**(C)    Payment Change Dates**
My biweekly payment will change as required by Section 4(D) below beginning on the **21ST** * day of **JULY, 2003** * * * * and every 52 weeks thereafter. Each of these dates is called a "Payment Change Date." My biweekly payment will also change at any time Section 4(F) or 4(G) below requires me to pay a different amount.

I will pay the amount of my new biweekly payment every other Monday beginning on each Payment Change Date and as provided in Section 4(F) or 4(G) below.

**(D)    Calculation of Payment Changes**
On the Payment Change Date my biweekly payment may be changed to an amount sufficient to pay the unpaid principal balance, including any deferred interest as described in Section 4(E) below, by the "Modified Maturity Date." The Modified Maturity Date is the date on which this note will be paid after accounting for

SD233B1 (09.15.01/3-01) C33C                    BIWEEKLY MARM                    COFI
                                                       Page 2                              FL

Declaration Exhibit A

acceleration of the payment schedule resulting from biweekly payments rather than the monthly payment schedule used to calculate the Maturity Date described in Section 4(A) above. However, the amount by which my payment can be changed will not be more or less than 7−1/2% of the then existing Principal and interest payment. This 7−1/2% limitation is called the "Payment Cap." Furthermore, my payment cannot be decreased on any Payment Change Date if there is any unpaid deferred interest. The Lender will perform this Payment Change calculation at least 50 but not more than 90 days before the Payment Change Date.

**(E)  Deferred Interest; Additions to My Unpaid Principal**

Because of the Payment Cap, my biweekly payments may be insufficient to pay the total amount of biweekly interest that is due. If this occurs, the amount of interest that is not paid each payment, called "Deferred Interest," will be added to my Principal and will accrue interest at the same rate as the Principal.

**(F)  Limit on My Unpaid Principal; Increased Biweekly Payment**

My unpaid principal balance can never exceed **125% * *** of the Principal I originally borrowed, called "Principal Balance Cap." If, as a result of the addition of deferred interest to my unpaid principal balance, the Principal Balance Cap limitation would be exceeded on the date that my biweekly payment is due, I will instead pay a new biweekly payment. Notwithstanding Sections 4(C) and 4(D) above, I will pay a new biweekly payment which is equal to an amount that will be sufficient to repay my then unpaid principal balance in full on the Maturity Date at the interest rate then in effect, in substantially equal payments.

**(G) Payment Cap Limitation; Exceptions**

On the **10TH, 15TH, 20TH, AND 25TH * *** Payment Change Dates, my biweekly payment will be calculated as described in Section 4(D) above except that the Payment Cap limitation will not apply. Additionally, the Payment Cap limitation will not apply on the final Payment Change Date.

**(H)  Notice of Payment Changes**

The Lender will deliver or mail to me a notice of any changes in the amount of my biweekly payment, called "Payment Change Notice," before each Payment Change Date. The Payment Change Notice will include information required by law.

## 5. FAILURE TO MAKE ADJUSTMENTS

If for any reason Lender fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Lender may, upon discovery of such failure, then make the adjustments as if they had been made on time. I also agree not to hold Lender responsible for any damages to me which may result from Lender's failure to make the adjustment and to let the Lender, at its option, apply any excess monies which I may have paid to partial prepayment of unpaid Principal.

## 6. BORROWER'S RIGHT TO PREPAY

I HAVE THE RIGHT TO MAKE PAYMENTS OF PRINCIPAL AT ANY TIME BEFORE THEY ARE DUE.  A PAYMENT OF PRINCIPAL BEFORE IT IS DUE IS CALLED A "PREPAYMENT".  WHEN I MAKE A PREPAYMENT, I WILL TELL THE LENDER IN WRITING THAT I AM DOING SO.  THE LENDER MAY REQUIRE THAT ANY PARTIAL PREPAYMENT BE MADE ON THE SAME DATE THAT A PAYMENT IS DUE.  AFTER THE FIRST 4 YEARS OF THE LOAN TERM, I MAY MAKE A FULL OR PARTIAL PREPAYMENT WITHOUT PAYING ANY PREPAYMENT CHARGE.  IF AT ANY TIME DURING THE FIRST 4 YEARS OF THE LOAN TERM, THE SUM OF THE PREPAYMENTS I MAKE DURING ANY CONSECUTIVE 12 MONTH PERIOD EXCEEDS 20% OF THE ORIGINAL LOAN BALANCE, THEN I MUST PAY A PREPAYMENT CHARGE EQUAL TO 2% OF THE ORIGINAL LOAN BALANCE.  IF I MAKE A PARTIAL PREPAYMENT, THERE WILL BE NO CHANGES IN THE DUE DATES OR AMOUNTS OF MY PAYMENTS UNLESS THE LENDER AGREES IN WRITING TO THOSE CHANGES.  MY PARTIAL PREPAYMENT MAY REDUCE THE AMOUNT OF MY PAYMENTS AFTER THE FIRST PAYMENT CHANGE DATE FOLLOWING MY PARTIAL PREPAYMENT. * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## 7. MAXIMUM LOAN CHARGES

If a law which applies to this loan and which sets maximum loan charges is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Lender may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

Declaration Exhibit A

## 8. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A)   Late Charges for Overdue Payments

If the Lender has not received the full amount of any biweekly payment by the end of   **15**   calendar days after the date it is due, I will pay a late charge to the Lender. The amount of the charge will be   **5%**   of my overdue payment of Principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B)   Default

I will be in default if (i) I do not pay the full amount of each biweekly payment on the date it is due; or (ii) I fail to perform any of my promises or agreements under this Note or the Security Instrument; or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts; or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading.

### (C)   Default — Change to Monthly Payments

If I fail to have sufficient funds in my deposit account to make my biweekly payment on the date my biweekly payment is due on two occasions in any 12 month period or four occasions any time prior to the Maturity Date or if a garnishment, attachment or seizure is made of or against my deposit account, then I will be in default and Lender will have a right, but not a duty, to change my loan to one with payments due monthly instead of biweekly. If the Lender chooses to change my loan to one with payments due monthly, Lender will provide me with written notice of the change at least 30 days in advance of the date the first monthly payment is due. This notice will also specify the amount of the monthly payment and the date the first monthly payment is due. In such event, interest on the loan balance from the last date interest was paid to the first date of the month preceding the date the first monthly payment is due will be added to my loan balance. The amount of the first monthly payment will be determined without regard to the 7−1/2% change in amount of payment cap set forth in section 4(D) above.

I understand that I may voluntarily change the payment mode from biweekly to monthly at any time by giving written notice to Lender at least 60 days in advance of the date on which I wish the change to take effect. If I give Lender such notice, Lender will then provide me with written notice of the amount of the monthly payment and the date the first monthly payment shall be due. I understand that should the payment mode be changed from biweekly to monthly either voluntarily or due to an event of default it will not be reversible.

In the event that my payment mode is changed from biweekly to monthly, interest will be charged thereafter on the basis of a 12 month year and a 30−day month. The Interest Rate I will pay will change on the first monthly payment date and on the same day every month thereafter. This revised interest change date will be substituted for the definition of "Interest Change Date" included in Section 3(B) above. The "Payment Change Date" as defined in Section 4(C) above will change to be the date the payment is changed from a biweekly to a monthly payment as described above in this paragraph 8(C) and on that day every 12 months thereafter.

### (D)   Notice of Default

If I am in default, the Lender may send me a written notice, called "Notice of Default," telling me that if I do not pay the overdue amount by a certain date, the Lender may require me to pay immediately the amount of Principal which has not been paid and all the interest that I owe on that amount, plus any other amounts due under the Security Instrument.

### (E)   No Waiver by Lender

Even if, at a time when I am in default, the Lender does not require me to pay immediately in full or change my loan type from biweekly to monthly at that time as described above, the Lender will still have the right to do so if I am in default at a later time.

### (F)   Payment of Lender's Costs and Expenses

The Lender will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses may include, for example, reasonable attorneys' fees and court costs.

## 9. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me or any Borrower at   **1455**
**WHISPERWIND LANE, OLDSMAR, FL  34677** * * * * * * * * * * * * * *
or at a single alternative address if I give the Lender a written notice of my alternative address. I may designate only one mailing address at a time for notification purposes.

Any notice that must be given to the Lender under this Note will be given by mailing it by first class mail to the Lender at 1901 Harrison Street, Oakland, California 94612, or at a different address if I am given a notice of that different address.

Declaration Exhibit A

## 10. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who takes over these obligations is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 11. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

## 12. SECURED NOTE – ACCELERATION

In addition to the protections given to the Lender under this Note, the Security Instrument dated the same date as this Note gives the Lender security against which it may proceed if I do not keep the promises which I made in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note and includes the following Paragraph 26:

### AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED

**Acceleration of Payment of Sums Secured.** Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument.

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me.

**Exception to Acceleration of Payment of Sums Secured.** If the sale or transfer of all or any part of the Property, or of a beneficial interest in Borrower, if Borrower is not a natural Person, is the first one to occur after the date of this Security Instrument, Lender will not exercise the option to accelerate payment in full of all Sums Secured and the loan may be assumed if:

(i)    Lender receives a completed written application from transferee to evaluate the creditworthiness of transferee as if a new loan were being made to the transferee by Lender;

(ii)    Lender approves the creditworthiness of the transferee in writing;

(iii)    transferee makes a cash downpayment sufficient to meet Lender's then current underwriting standards;

(iv)    an assumption fee, in an amount to be determined by Lender (but not to exceed 1% of the balance of principal and interest due under the Secured Notes at the time of sale or transfer of the Property or of the interest in the Borrower) is paid to Lender; and

(v)    the transferee executes an assumption agreement which is satisfactory to Lender, such assumption agreement providing for transferee opening a deposit account with Lender, or with a bank or savings and loan which has been approved by Lender, for direct payment as provided in the secured notes.

The loan may be assumed under its then existing terms and conditions with one exception; the Lifetime Rate Cap may be changed. The Lifetime Rate Cap shall be changed to an interest rate which is the sum of the interest rate in effect on the date of a sale or transfer of the Property or beneficial interest in Borrower plus 5 percentage points, if that sum exceeds the Lifetime Rate Cap stated in the Secured Notes.

## 13. GOVERNING LAW; SEVERABILITY

This Note shall be governed by and construed under federal law and federal rules and regulations including those for federally chartered savings institutions, called "Federal Law." In the event that any of the terms or provisions of this Note are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Note.

Declaration Exhibit A

**14. CLERICAL ERRORS**

In the event the Lender at any time discovers that this Note or the Security Instrument or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from the Lender, to reexecute any Loan Documents that are necessary to correct any such error(s) and I also agree that I will not hold the Lender responsible for any damage to me which may result from any such error.

**15. LOST, STOLEN OR MUTILATED DOCUMENTS**

If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Lender delivers to me an idemnification in my favor, signed by the Lender, then I will sign and deliver to the Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

**THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS.**

Declaration Exhibit A



SIGNATURE PAGE

NOTICE TO BORROWER(S):

BY SIGNING THIS NOTE YOU AGREE TO PAY A PREPAYMENT CHARGE IN CERTAIN CIRCUMSTANCES.   PLEASE CAREFULLY READ THIS ENTIRE NOTE (INCLUDING THE PREPAYMENT PROVISION) BEFORE YOU SIGN IT.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)

BORROWER(S):

_____ (Seal)
RANDALL ARTHUR

_____ (Seal)
KATHLEEN ARTHUR

_____ (Seal)

_____ (Seal)

_____ (Seal)

_____ (Seal)

Declaration Exhibit A



Office of Thrift Supervision
Department of the Treasury

Nicholas J. Dyer
Assistant Regional Director

Pacific Plaza, 2001 Junipero Serra Boulevard, Suite 650, Daly City, CA 94014-1976
P.O. Box 7165, San Francisco, CA 94120-7165 • Telephone: (650) 746-7025 • Fax: (650) 746-7001

November 19, 2007

John A. Stoker, Esq.
Vice President and Assistant General Counsel
Wachovia Corporation
Legal Division – NC0630
One Wachovia Center
301 South Charlotte Street
Charlotte, NC 28288

Re:  World Savings Bank, FSB, Oakland, California
Notice of Amendment of Charter and Bylaws

Dear Mr. Stoker:

This is in response to your letter, dated November 8, 2007, with enclosures, which you
filed with the Office of Thrift Supervision (OTS) on behalf of World Savings Bank, FSB
to amend the savings bank's charter and bylaws to change its name to Wachovia Mortgage,
FSB and reflect a change in the location of its home office. The new home office address
is 6825 Aliante Parkway, North Las Vegas, Nevada.

The institution met the requirements of 12 C.F.R. §§ 552.4(b) and 552.5(b)(2), and the
proposed amendments will be effective December 31, 2007, as set forth in the Board of
Directors' resolution adopting the changes to the charter and bylaws. The filing also met
the requirement of 12 C.F.R. § 545.91(b) that the savings bank notify the OTS if there is a
change in the permanent address of its home office.

Please feel free to contact me at (650) 746-7025 if there are any questions.

Sincerely,

Nicholas J. Dyer

Nicholas J. Dyer
Assistant Regional Director

cc:  Robert Burns, FDIC - Atlanta

Declaration Exhibit A



**Comptroller of the Currency**
**Administrator of National Banks**

Large Bank Licensing

November 1, 2009

Mr. James E. Hanson
Vice President
Wells Fargo Bank, National Association
90 South Seventh Street
Minneapolis, MN 55479

Re:     Application to convert Wachovia Mortgage, FSB, North Las Vegas, Nevada to a national
        bank and application to merge the converted bank with and into Wells Fargo Bank,
        National Association, Sioux Falls, South Dakota
        Application Control Numbers:  2009-ML-01-0007 and 2009-ML-02-0010

Dear Mr. Hanson:

This letter is the official certification of the Comptroller of the Currency (OCC) of the
conversion of Wachovia Mortgage FSB, North Las Vegas, Nevada to a national bank with the
name Wells Fargo Bank Southwest, National Association, effective November 1, 2009.  This is
also the official certification to merge Wells Fargo Bank Southwest, National Association with
and into Wells Fargo Bank, National Association, Sioux Falls, South Dakota, effective
November 1, 2009.

If you have questions regarding this letter, please contact me at (202) 874-5294 or by email at:
Stephen.Lybarger@occ.treas.gov .  Please reference the application control number or numbers
in any correspondence.

Sincerely,

*Stephen A. Lybarger*

Stephen A. Lybarger
Large Bank Licensing Lead Expert

RECORDING REQUESTED BY:
WORLD SAVINGS BANK

WHEN RECORDED MAIL TO:
WORLD SAVINGS
FINAL DOCUMENTATION
CLOSING DEPARTMENT
P.O. BOX 659548
SAN ANTONIO, TX 78265-9548

PAGES 19
ACCT
REC 8200
DR219
DS 70000
INT 4000
FEES
MTE
P/C
REV

TOTAL 11820
CK BAL
CHG AMT

02-232306 JUN-20-2002 1.25PM
PINELLAS CO BK 12066 PG 646

NOTE AMOUNT: $200,000.00

FOR RECORDER'S USE ONLY

### MORTGAGE

THIS IS A FIRST MORTGAGE WHICH SECURES A NOTE WHICH CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, FREQUENCY AND AMOUNT OF PAYMENTS AND PRINCIPAL BALANCE (INCLUDING FUTURE ADVANCES AND DEFERRED INTEREST). AT LENDER'S OPTION THE SECURED NOTE MAY BE RENEWED OR RENEGOTIATED.

THE MAXIMUM AGGREGATE PRINCIPAL BALANCE SECURED BY THIS MORTGAGE IS $250,000.00 WHICH IS 125 % OF THE ORIGINAL PRINCIPAL NOTE AMOUNT.

I.    DEFINITIONS OF WORDS USED IN THIS MORTGAGE
     (A)   Security Instrument. This Mortgage, which is dated JUNE 14, 2002, * * * * * * will be called the "Security Instrument."

     (B)   Borrower. RANDALL ARTHUR AND KATHLEEN ARTHUR, HUSBAND AND WIFE

sometimes will be called "Borrower" and sometimes simply "I" or "me."

     (C)   Lender. WORLD SAVINGS BANK, FSB, * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * ITS SUCCESSORS AND/OR ASSIGNEES, will be called "Lender." Lender is A FEDERAL SAVINGS BANK * * * * * * * * * * * * which is organized and exists under the laws of the United States Lender's address is 1901 HARRISON STREET, OAKLAND, CALIFORNIA 94612.

     (D)   Note. The note signed by Borrower and having the same date as this Security Instrument, including all extensions, renewals, substitutions and modifications thereof, will be called the "Note." The Note shows that I owe Lender the original principal amount of U.S. $200,000.00 * *     ("Note Amount"), plus accrued and deferred interest and such other amounts as stated in the Note. I have promised to pay this debt in biweekly payments and to pay the debt in full by JULY 08, 2032.

     (E)   Property. The property that is described below in Section III entitled "Description of the Property" will be called the "Property."

     (F)   Sums Secured. The amounts described below in Section II entitled "Borrower's Transfer of Rights in the Property" sometimes will be called the "Sums Secured"

     (G)   Person. Any person, organization, governmental authority or other party will be called "Person."

SD042A1 (09 29.97/2-97) A42A
DEFERRED INTEREST
REV (02.15.02/1-02)

Page 1
MORTGAGE-ADJ. BIWEEKLY

FL

Declaration Exhibit B

PINELLAS COUNTY FLA.
OFF.REC BK 12066 PG 647

## II.  BORROWER'S TRANSFER OF RIGHTS IN THE PROPERTY

I mortgage, irrevocably grant and convey the Property to Lender subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to.

(i)  pay all amounts owed to Lender under the Note and all other notes secured by this Security Instrument, called the "Secured Notes," including future advances made by Lender and any changes to the Secured Notes made with the written consent of Lender,

(ii)  pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 below to protect the value of the Property and Lender's rights in the Property; and

(iii)  keep all of my other promises and agreements under this Security Instrument, the Secured Notes and any changes to the Secured Notes made with the written consent of Lender.

## III.  DESCRIPTION OF THE PROPERTY

I give Lender rights in the Property described below:

(i)  The property which is located at **1455 WHISPERWIND LANE OLDSMAR, FL 34677.** * * * * * * * * * * * * * * * * * * * * * The legal description of the Property is attached as Exhibit "A" which is made a part of this Security Instrument. This Property is called the "Described Property."

(ii)  All buildings and other improvements that are located on the Described Property,

(iii)  All rights in other property that I have as owner of the Described Property. These rights are known as easements, rights and appurtenances attached to the Property;

(iv)  All rents or royalties and other income from the Described Property;

(v)  All mineral, oil and gas rights and profits, water rights and stock that are part of the Described Property;

(vi)  All rights that I have in the land which lies in the streets or roads in front of, behind or next to, the Described Property;

(vii)  All fixtures that are now or in the future will be on the Described Property or on the property described in subsection (ii) of this Section;

(viii)  All of the rights and property described in subsections (ii) through (vii) of this Section that I acquire in the future;

(ix)  All replacements of or additions to the property described in subsections (ii) through (viii) of this Section; and

(x)  All of the amounts that I pay to Lender under Paragraph 2 below.

## IV.  BORROWER'S RIGHT TO GRANT A SECURITY INTEREST IN THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (i) I lawfully own the Property, (ii) I have the right to mortgage, grant and convey the Property to Lender; and (iii) there are no outstanding claims, charges, liens or encumbrances against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

Declaration Exhibit B



PINELLAS COUNTY FLA.
OFF.REC.BK 12066 PG 648

**COVENANTS**

I promise and I agree with Lender as follows.

1.    **BORROWER'S PROMISE TO PAY**

I will pay to Lender, on time, all principal and interest due under the Secured Notes and any prepayment and late charges due under the Secured Notes

2.    **PAYMENTS FOR TAXES AND INSURANCE**

(A)    **Borrower's Obligations**

I will pay all amounts necessary to pay taxes and hazard insurance premiums on the Property as well as assessments, leasehold payments, ground rents or mortgage insurance premiums (if any)

(B)    **Escrow Accounts**

Subject to applicable law, no escrow shall be required except upon written demand by Lender, in which case, I shall pay to Lender on the day payments are due under the Note, until the Note is paid in full, a sum ("Funds") for (a) yearly taxes, penalties and assessments which may attain priority over this Security Instrument as a lien on the Property, (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; and (e) yearly mortgage insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for an escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12. U.S.C § 2601 et seq ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items in accordance with applicable law

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and/or applicable law permits Lender to make such a charge. However, Lender may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay me any interest or earnings on the Funds. Lender shall give to me, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

SD042C (09 29 97/2-97) A42D                    MORTGAGE-ADJ. BIWEEKLY                    FL
                                                          Page 3

Declaration Exhibit B

PINELLAS COUNTY FLA.
OFF.REC.BK 12066 PG 649

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to me for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify me in writing, and, in such case I shall pay to Lender the amount necessary to make up the deficiency or shortage. I shall make up the deficiency or shortage in accordance with the requirements of the Lender, at its sole discretion, in the manner and times prescribed by RESPA

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to me any Funds held by Lender. If, under paragraph 28, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3.    APPLICATION OF BORROWER'S PAYMENTS

Unless the law requires otherwise, Lender will apply each of my payments under the Secured Notes and under Paragraphs 1 and 2 above in the following order and for the following purposes:

First, to pay prepayment charges due under the Secured Notes;

Second, to pay any advances due to Lender under this Security Instrument;

Third, to pay the amounts due to Lender under Paragraph 2 above;

Fourth, to pay interest due under the Secured Notes;

Fifth, to pay deferred interest due under the Secured Notes;

Sixth, to pay principal due under the Secured Notes;

Last, to pay late charges due under the Secured Notes.

4.    BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS

I will pay all taxes, assessments and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument.

I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property. I will pay these amounts either by making the payments to Lender that are described in Paragraph 2 above or by making the payments on time to the Person owed them.

Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a **lien**. I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves in writing the way in which I agree

Declaration Exhibit B

PINELLAS COUNTY FLA
OFF REC BK 12066 PG 650

to pay that obligation; or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced and no part of the Property must be given up; or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that Person If Lender determines that any part of the Property is subject to a superior lien, Lender may give to me a notice identifying the superior lien. I will pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5.   BORROWER'S OBLIGATION TO MAINTAIN INSURANCE**

At my sole cost and expense, I will obtain and maintain hazard insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage. The insurance must be in the amounts and for the periods of time required by Lender. I may choose the insurance company but my choice is subject to Lender's approval Lender may not refuse to approve my choice unless the refusal is reasonable. All of these insurance policies and renewals of the policies must include what is known as a **Standard Mortgagee Clause** to protect Lender. The form of all policies and renewals must be acceptable to Lender Lender will have the right to hold the policies and renewals If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain earthquake insurance, any other hazard insurance, credit life and/or disability insurance, or any other insurance on or relating to the Property or the Secured Notes and which are not specifically required by Lender, I will name Lender as loss payee of any proceeds.

If there is a loss or damage to the Property, I will promptly notify the proper insurance company and Lender If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "Proceeds" Any Proceeds received will be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining the Proceeds, and then, at Lender's option and in the order and proportion as Lender may determine in its sole and absolute discretion, regardless of any impairment or lack of impairment of security, as follows: (A) to the extent allowed by applicable law, to the Sums Secured in a manner that Lender determines and/or (B) to the payment of costs and expenses of necessary repairs or to the restoration of the Property to a condition satisfactory to Lender, such application to be made in the manner and at the times as determined by Lender.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may collect the Proceeds Lender may use the Proceeds to repair or restore the Property or to pay the Sums Secured The 30-day period will begin when the notice is given.

If any Proceeds are used to reduce the amount of principal which I owe to Lender under the Secured Notes, that use will not delay the due date or change the amount of any of my biweekly payments under the Secured Notes and under Paragraphs 1 and 2 above However, Lender and I may agree in writing to delays or changes.

If Lender acquires the Property under Paragraph 27 below, all of my rights in the insurance policies will belong to Lender Also, all of my rights in any proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender However, Lender's rights in those proceeds will not be greater than the Sums Secured immediately before the Property is acquired by Lender or sold

If I am required by Lender to pay premiums for mortgage insurance, I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law.

Declaration Exhibit B

PINELLAS COUNTY FLA.
OFF REC BK 12066 PG 651

6.    **BORROWER'S OBLIGATION TO MAINTAIN THE PROPERTY AND TO FULFILL ANY LEASE OBLIGATIONS**

I will keep the Property in good repair. I will not destroy or substantially change the Property and I will not allow the Property to deteriorate. I will keep and maintain the Property in compliance with any state or federal hazardous materials and hazardous waste laws. I will not use, generate, manufacture or store any hazardous materials or hazardous waste on, under or about the Property. I will indemnify, defend and hold harmless Lender and its employees, officers and directors and their successors from any claims, damages or costs for required or necessary repair or the removal of hazardous waste or any other hazardous materials claim. If I do not own but am a tenant on the property, I will fulfill my obligations under my lease. I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

7.    **LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY**

If: (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (such as a legal proceeding in bankruptcy, in probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever it deems reasonable or appropriate to protect the Lender's rights in the Property. Lender's actions may, without limitation, include appearing in court, paying reasonable attorneys' fees, purchasing insurance required under Paragraph 5 above (such insurance may cost more and provide less coverage than the insurance I might purchase), and entering on the Property to make repairs. Lender must give me notice before Lender may take any of these actions. Although Lender may take action under this Paragraph 7, Lender does not have to do so. Any action taken by Lender under this Paragraph 7, will not release me from my obligations under this Security Instrument.

I will pay to Lender any amounts which Lender advances under this Paragraph 7 with interest, at the interest rate in effect under the Secured Notes which have not been paid. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. Interest on each amount will begin to accrue on the date that the amount is advanced by Lender. However, Lender and I may agree in writing to terms that are different from those in this Paragraph 7. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

8.    **LENDER'S RIGHT TO INSPECT THE PROPERTY**

Lender, and others authorized by Lender, may enter upon and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

9.    **AGREEMENTS ABOUT GOVERNMENTAL TAKING OF THE PROPERTY**

I assign to Lender all my rights: (A) to proceeds of all awards or claims for damages resulting from condemnation, eminent domain or other governmental taking of all or any part of the Property; and (B) to proceeds from a sale of all or any part of the Property that is made to avoid condemnation, eminent domain or other government taking of the property. All of those proceeds will be paid to Lender.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me. Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, the amount that I owe to Lender will be reduced only by the amount of proceeds multiplied by the following fraction: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds. Lender may then use the proceeds to repair or restore the Property or to reduce the Sums Secured. The 30-day period will begin when the notice is given.

Declaration Exhibit B

PINELLAS COUNTY FLA.
OFF.REC.BK 12066 PG  652

If any proceeds are used to reduce the amount of principal which I owe to Lender under the Secured Notes, that use will not delay the due date or change the amount of any of my biweekly payments under the Secured Notes and under Paragraphs 1 and 2 above However, Lender and I may agree in writing to delays or changes

**10.    CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS**
**(A)    Borrower's Obligations**
Lender may allow a Person who takes over my rights and obligations subject to this Security Instrument to delay or to change the amount of the biweekly payments of principal and interest due under the Secured Notes or under this Security Instrument. Even if Lender does this, however, that Person and I will both still be fully obligated under the Secured Notes and under this Security Instrument.

Lender may allow those delays or changes for a Person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a Person for not fulfilling obligations under the Secured Notes or under this Security Instrument, even if Lender is requested to do so.

**(B)    Lender's Rights**
Even if Lender does not exercise or enforce any of its rights under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 27 below to demand that I make immediate payment in full of the amounts that I owe to Lender under the Secured Notes and under this Security Instrument.

**11.    OBLIGATIONS OF BORROWER AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS**
Any Person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Similarly, any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured

**12.    MAXIMUM LOAN CHARGES**
If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits, then. (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower Lender may choose to make this refund by reducing the principal owed under the Secured Notes or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Secured Notes.

**13.    LEGISLATION AFFECTING LENDER'S RIGHTS**
If a change in applicable law would make any provision of the Secured Notes or this Security Instrument unenforceable, Lender may require that I make immediate payment in full of all Sums Secured by this Security Instrument

**14.    NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT**
Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at **1455 WHISPERWIND LANE, OLDSMAR, FL 34677.**

Declaration Exhibit B

A notice will be given to me at an alternative address if I give Lender a notice of my alternative address. I may designate only one mailing address at a time for notification purposes. Any notice that must be given to Lender under this Security Instrument will be given by mailing it by first class mail to Lender's address stated in Section I.(C) above entitled, "Definitions of Words Used In This Mortgage," unless Lender gives me notice of a different address Any notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law

**15.    GOVERNING LAW; SEVERABILITY**
This Security Instrument and the Secured Notes shall be governed by and construed under federal law and federal rules and regulations including those for federally chartered savings institutions, called "Federal Law." In the event that any of the terms or provisions of this Security Instrument or the Secured Notes are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Security Instrument or the Secured Notes.

**16.    BORROWER'S COPY**
I acknowledge the receipt of one conformed copy of the Secured Notes and of this Security Instrument.

**17.    LENDER'S RIGHTS TO RENTAL PAYMENTS AND TO TAKE POSSESSION OF THE PROPERTY**
If Lender requires immediate payment in full or if I abandon the Property, then Lender, Persons authorized by Lender, or a receiver appointed by a court at Lender's request may: (A) collect the rental payments, including overdue rental payments, directly from the tenants; (B), enter upon and take possession of the Property; (C) manage the Property; and (D) sign, cancel and change rental agreements and leases. If Lender notifies the tenants that Lender has the right to collect rental payments directly from them under this Paragraph 17, I agree that the tenants may make those rental payments to Lender without having to ask (i) Lender whether I have failed to keep my promises and agreements under this Security Instrument, or (ii) me for my permission to do so.

If Lender acts to have the Property sold after a Breach of Duty as defined in Paragraph 27, I understand and agree that: (A) my right to occupy the Property ceases at the time the Property is sold; (B) I shall have no right to occupy the Property after such sale without the written consent of the new owner of the Property; and (C) my wrongful and unlawful possession of the Property may subject me to monetary damages, including the loss of reasonable rent and the cost of eviction. All rental payments collected by Lender or by a receiver, other than the rent paid by me under this Paragraph 17, will be used first to pay the costs of collecting rental payments and of managing the Property. If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the Sums Secured. The costs of managing the Property may include the receiver's fees, reasonable attorneys' fees and the costs of any necessary bonds.

**18.    INJURY TO PROPERTY; ASSIGNMENT OF RIGHTS**
An **assignment** is a transfer of rights to another. I may have rights to bring legal action against persons, other than Lender, for injury or damage to the Property or in connection with the loan made to me by Lender and which arose or will arise before or after the date of this Security Instrument. These rights to bring legal action may include an action for breach of contract, fraud, concealment of a material fact or for intentional or negligent acts I assign these rights, and any proceeds arising from these rights, as permitted by applicable law, to Lender Lender may, at its option, enforce these rights in its own name and may apply any proceeds resulting from this assignment to any amount that I may owe to Lender under the Note and this Security Instrument after deducting any expenses, including attorneys' fees, incurred in enforcing these rights. At the request of Lender, I will sign any further assignments or other documents that may be necessary to enforce this assignment.

MORTGAGE-ADJ. BIWEEKLY
Page 8

FL

Declaration Exhibit B



**19.  CLERICAL ERRORS**
In the event Lender at any time discovers that this Security Instrument the Secured Notes or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from Lender, to reexecute any Loan Documents that are necessary to correct any such error(s) and I also agree that I will not hold Lender responsible for any damage to me which may result from any such error.

**20.  LOST, STOLEN OR MUTILATED DOCUMENTS**
If any of the Loan Documents are lost, stolen, mutilated or destroyed and Lender delivers to me an indemnification in my favor, signed by Lender, then I will sign and deliver to Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

**21.  WAIVER OF STATUTE OF LIMITATIONS**
I will waive, within applicable law, the pleading of the statute of limitations as a defense to enforce this Security Instrument, including any obligations referred to in this Security Instrument or Secured Notes.

**22.  CAPTIONS**
The captions and headings at the beginning of each paragraph of this Security Instrument are for reference only and will not be used in the interpretation of any provision of this Security Instrument.

**23.  MODIFICATION**
This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

Lender may modify the Security Instrument and the Secured Notes at Lender's sole discretion in the event that I have failed to make my biweekly payments in the manner set forth in the Secured Notes. In the event of a modification to monthly payments, Lender will substitute the term "monthly payment" at each point that the term "biweekly payment" appears in this Security Instrument.

**24.  CONDOMINIUM, COOPERATIVE AND PLANNED UNIT DEVELOPMENT OBLIGATIONS**
If the Property is a unit in a condominium, cooperative or planned unit development, each of which shall be called the "Project," and I have an interest in the common elements of the Project, then Lender and I agree that:

**(A)**  If an owners association or other entity, called "Owners Association," holds title to Property for the benefit or use of the Project and its members or shareholders, the Property also includes my interest in the Owners Association and the uses, proceeds and benefits of my interest.

**(B)**  The following are called the "Constituent Documents." (i) The declaration or any other document which created the Project; (ii) By-laws of the Owners Association; (iii) Code of regulations for the Project; (iv) Articles of incorporation, trust instrument or equivalent document which creates the Owners Association; (v) The Project's covenants, conditions and restrictions; (vi) Other equivalent documents.

I shall perform all of my obligations under the Constituent Documents, including my obligation to pay, when due, all dues and assessments. If I do not pay the dues and assessments when due, Lender may, at its option, pay them. I will pay to Lender any amounts which Lender advances under this Paragraph 24 according to the terms described in Paragraph 7 above.

**(C)**  If the Owners Association maintains, with an insurance company reasonably acceptable to Lender, a **master** or **blanket** policy on the Project which is satisfactory to Lender and which provides insurance coverage on the terms, in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," and Lender is provided with evidence of such **master** or **blanket** policy,

Declaration Exhibit B

then: (i) Lender waives the provision in Paragraph 2(B) above for the payment to Lender of the estimated yearly premium installments for hazard insurance on the Property; and (ii) hazard insurance coverage on the Property as required by Paragraph 5 above is deemed to be satisfied to the extent that the required coverage is provided by the Owners Association policy I shall give Lender prompt notice of any lapse in the required hazard insurance coverage. I shall provide a copy of such **master** or **blanket** policy to Lender annually.

In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to me are hereby assigned and shall be paid to Lender for application to the Sums Secured by this Security Instrument, with any excess paid to me.

I shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable to Lender in form, amount and extent of coverage

**(D)** I shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of condemnation, eminent domain or other governmental taking; (ii) any amendment to any provision of Constituent Documents unless the provision is for the express benefit of Lender or of lenders generally, (iii) termination of professional management and assumption of self-management of the Owners Association, or (iv) any action which would have the effect of rendering the **master** or **blanket hazard** insurance policy and/or the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

## 25. FUTURE ADVANCES

At Borrower's request, Lender, at its option (but before release of this Security Instrument or the full reconveyance of the Property described in the Security Instrument) may lend future advances, with interest, to Borrower Such future advances, with interest, will then be additional Sums Secured under this Security Instrument.

## 26. AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED

**Acceleration of Payment of Sums Secured.** Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument.

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me

**Exception to Acceleration of Payment of Sums Secured.** If the sale or transfer of all or any part of the Property, or of a beneficial interest in Borrower, if Borrower is not a natural Person, is the first one to occur after the date of this Security Instrument, Lender will not exercise the option to accelerate payment in full of all Sums Secured and the loan may be assumed if

(i)    Lender receives a completed written application from transferee to evaluate the creditworthiness of transferee as if a new loan were being made to the transferee by Lender,

(ii)    Lender approves the creditworthiness of the transferee in writing;

(iii)    transferee makes a cash downpayment sufficient to meet Lender's then current underwriting standards;

Declaration Exhibit B

PINELLAS COUNTY FLA.
OFF.REC.BK 12066 PG 656

(iv)    an assumption fee, in an amount to be determined by Lender (but not to exceed 1% of the balance of principal and interest due under the Secured Notes at the time of sale or transfer of the Property or of the interest in the Borrower) is paid to Lender, and

(v)    the transferee executes an assumption agreement which is satisfactory to Lender, such assumption agreement providing for transferee opening a deposit account with Lender, or with a bank or savings and loan which has been approved by Lender, for direct payment as provided in the secured notes

The loan may be assumed under its then existing terms and conditions with one exception, the Lifetime Rate Cap may be changed. The Lifetime Rate Cap shall be changed to an interest rate which is the sum of the interest rate in effect on the date of a sale or transfer of the Property or beneficial interest in Borrower plus 5 percentage points, if that sum exceeds the Lifetime Rate Cap stated in the Secured Notes.

**27.    RIGHTS OF THE LENDER IF THERE IS A BREACH OF DUTY**
It will be called a "Breach of Duty" if (i) I do not pay the full amount of each biweekly payment on the date it is due; or (ii) I fail to perform any of my promises or agreements under the Note or this Security Instrument; or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts; or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading. If there is a Breach of Duty by me, Lender may demand an immediate payment of all sums secured

If there is a Breach of Duty by me, Lender may take action to have the Property sold under any applicable Federal Law, rule or regulation and, where Federal Law is not applicable, under the law of the state where the Property is located, which will be called the "Applicable Law."

Lender does not have to give me notice of a Breach of Duty unless notice is required by Applicable Law. If Lender does not make a demand for full payment upon a Breach of Duty, Lender may make a demand for full payment upon any other Breach of Duty.

If there is a Breach of Duty, Lender may also take action to have a receiver appointed under the Applicable Law to collect rents from any tenants on the Property and to manage the Property. The action to appoint a receiver may be taken without prior notice to me and regardless of the value of the Property.

The sale of the Property may be postponed by or at the direction of Lender except as limited or prohibited by the Applicable Law. If the Property is sold under the Applicable Law, I agree that it may be sold in one parcel. I also agree that Lender may add to the amount that I owe to Lender all legal fees, costs, allowances, and disbursements incurred as a result of the action to sell the Property, except to the extent that the Applicable Law limits or prohibits any such charges.

Lender will apply the proceeds from the sale of the Property in the following order: (A) to all fees, expenses and costs incurred in connection with the sale, including trustees' and attorneys' fees, if any, (B) to all Sums Secured by this Security Instrument; and (C) any excess to the Person or Persons legally entitled to it.

**28.    LENDER'S OBLIGATION TO DISCHARGE THIS SECURITY INSTRUMENT**
When Lender has been paid all of the amounts secured by this Security Instrument, Lender shall release or cancel this Security Instrument without charge to me except that I will pay any recordation costs.

Declaration Exhibit B

**29.    STATEMENT OF OBLIGATION**
     To the extent allowed by law, I will give Lender a fee for furnishing any statement of obligation with respect to this Security Instrument or the Secured Notes.

**30.    WAIVER OF MAXIMUM ADVANCE**
     I waive the right to record a notice allowed by Florida Statute 697.04 (1)(b), as it may be amended, limiting the maximum principal amount which may be secured by this Security Instrument, if I do record such a notice, it will be a Breach of Duty.

**31.    ATTORNEY'S FEES**
     The term attorney's fees as used in the Secured Notes or in this Security Instrument shall include any attorney's fees allowed by an appellate court.

**32.    RIDERS TO THIS SECURITY INSTRUMENT**
     If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

**33.    QUICK QUALIFYING LOAN PROGRAM**
     I have qualified for this loan by making statements of fact which were relied upon by Lender to approve the loan rapidly This loan is called a "Quick Qualifying Loan." I have stated and I confirm that: (A) I do not have any other Quick Qualifying Loans with Lender, (B) I have agreed to not further encumber the Property and do not intend to further encumber the Property for at least six months after the date of the Secured Notes and this Security Instrument; and (C) If I am purchasing the Property, all of the terms of the purchase agreement submitted to Lender are true and the entire down payment is cash from my own funds

     If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin subject to the Lifetime Rate Cap stated in the Secured Notes.

**34.    OWNER OCCUPANCY**
     Lender has relied upon statements of fact which I have made to qualify for this loan I have stated and confirm that: (A) the Property is my personal and primary residence; (B) I will occupy the Property not later than 30 days after this Security Instrument is recorded; and (C) I will use the Property as my residence for at least 12 months from the date this Security Instrument is recorded

     If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin, subject to the Lifetime Rate Cap stated in the Secured Notes

**THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS.**

Declaration Exhibit B

PINELLAS COUNTY FLA.
OFF.REC.BK 12066 PG  659

**BY SIGNING BELOW,** I accept and agree to the promises and agreements contained in this Security Instrument and in any rider(s) signed by me and recorded in proper official records.

**(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)**

WITNESS(ES):

Kathryn Cornett

BORROWER(S)

William J. Boyle

_____ (Seal)
RANDALL ARTHUR

_____ (Seal)
KATHLEEN ARTHUR

_____ (Seal)

_____ (Seal)

_____ (Seal)

_____ (Seal)

**ATTACH INDIVIDUAL   NOTARY ACKNOWLEDGEMENT**

A "MODIFICATION TO NOTE AND RIDER TO SECURITY INSTRUMENT" IS ATTACHED HERETO AND RECORDED HEREWITH.

THIS INSTRUMENT PREPARED BY:   DORRIE BRENNAN
P.O. BOX 659548
SAN ANTONIO, TX 78265-9548

RA

SD042M1 (09 29.97/2-97) A42Q          MORTGAGE-ADJ. BIWEEKLY          FL
Page 13 of 13

Declaration Exhibit B

PINELLAS COUNTY FLA.
OFF.REC.BK 12066 PG  659

STATE OF FLORIDA
COUNTY OF _Pinellas_____

    The foregoing instrument was acknowledged before me this
_14th_ day of _June____, 2002, by Randall Arthur and Kathleen
Arthur.  He/she is personally known to me or has produced
_____ as identification.

KATHRYN CORNETT
MY COMMISSION # CC 887850
EXPIRES January 23, 2004
Bonded Thru Notary Public Underwriters

Print Name: _Kathryn Cornett_____
                    (Notary Public)

(AFFIX NOTARY SEAL)

My Commission Expires:

_____

Declaration Exhibit B

PINELLAS COUNTY FLA.
OFF REC.BK 12086 PG 660

# WORLD SAVINGS

## E X H I B I T  "A"
## LEGAL DESCRIPTION

ALL THAT CERTAIN REAL PROPERTY SITUATED IN THE COUNTY OF PINELLAS
STATE OF FLORIDA * * * * * * * , DESCRIBED AS FOLLOWS:

Lot 20, GREENHAVEN UNIT-FOUR, according to the map or plat thereof, as recorded in Plat Book 104, page 13
through 15 inclusive, of the Public Records of Pinellas County, Florida.

Parcel Identification Number: 10-28-16-33313-000-0200

**TAPE ONLY THE LEGAL DESCRIPTION TO THIS PAGE.**

Declaration Exhibit B

Case 8:15-bk-12503-CPM   Doc 63   Filed 08/01/16   Page 31 of 50

IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL
CIRCUIT
IN AND FOR PINELLAS COUNTY, FLORIDA

CASE NO.: 13-011340-CI
REF #:

WELLS FARGO BANK, N.A,
Plaintiff,

VS.

RANDALL ARTHUR; KATHLEEN
ARTHUR; AMSOUTH BANK; UNITED
STATES OF AMERICA; GREENHAVEN
UNIT FOUR ASSOCIATION, INC.;
GREENHAVEN UNIT THREE
HOMEOWNERS ASSOCIATION, INC.;
EAST LAKE WOODLANDS
COMMUNITY ASSOCIATION, INC.
F/K/A EAST LAKE MASTER
ASSOCIATION, INC.; ANY AND ALL
UNKNOWN PARTIES CLAIMING BY,
THROUGH, UNDER AND AGAINST THE
HEREIN NAMED INDIVIDUAL
DEFENDANT(S) WHO ARE NOT
KNOWN TO BE DEAD OR ALIVE,
WHETHER SAID UNKNOWN PARTIES
MAY CLAIM AN INTEREST AS
SPOUSES, HEIRS, DEVISEES,
GRANTEES, OR OTHER CLAIMANTS,
Defendant(s).
_____/



## UNIFORM FINAL JUDGMENT OF FORECLOSURE

**THIS MATTER** was heard before the Court at Non-Jury Trial on July 23, 2015.  After consideration of all evidence presented, this Court rules as follows:

**IT IS ADJUDGED** that:

1.     Plaintiff has submitted a Certificate of Compliance with Foreclosure Procedures in compliance with Administrative Orders 2013-026 and 2014-049 or any subsequent Administrative Order.

2.     VALUE OF CLAIM: At the initiation of this action, in accordance with section 28.241(1)(a)2.b., Florida Statutes, Plaintiff estimated the amount in controversy of the claim to be $165,785.78.   In accordance with section 28.241(1)(a)2.c., Florida Statutes, the Court identifies the actual value of the claim to be $230,861.11, as set forth below. For any difference

Declaration Exhibit C

between the estimated amount in controversy and the actual value of the claim that requires the filing Fee to be adjusted, the Clerk shall adjust the filing fee. In determining whether the filing fee needs to be adjusted, the following graduated filing fee scale in section 28.241(1)(a)2,d., Florida Statutes, controls:

| $400 | Value of claim less than or equal to $50,000 with 5 defendants or less |
| $905 | Value of claim greater than $50,000 but less than $250,000 with 5 defendants or less |
| $1,905 | Value of claim $250,000 or greater with 5 defendants or less |

If an excess filing fee was paid, the Clerk shall provide a refund of the excess fee. If an additional filing fee is owed, the Plaintiff shall pay the additional fee at least 24 hours prior to the judicial sale. If any additional filing fee owed is not paid prior to the judicial sale, the Clerk shall cancel the judicial sale without further order of the Court.

3.      The following amounts are due and owed to the Plaintiff:

| | | |
|---|---|---|
| Principal due on the note secured by the mortgage foreclosed: | | $160,569.79 |
| Interest on the note and mortgage from 2/15/2013 to 7/23/2015 | | $20,815.32 |
| Late charges | | $110.58 |
| Escrow advances | | $38,242.12 |
| Title search expenses | | $400.00 |
| Court costs: | | $2,588.30 |
| Complaint Filing Fee | $905.00 | |
| LP | $5.00 | |
| Additional LP | $1.00 | |
| Over 5 Defendants | $12.50 | |
| e-Filing Fee 12/10/13 | $3.00 | |
| Summons | $70.00 | |
| Service of Process 2/3/14 | $801.30 | |
| Service of Process 2/9/15 | $110.00 | |
| Mediation | $650.00 | |
| Amended Summons | $27.50 | |
| e-Filing Fee 1/26/15 | $3.00 | |
| Property Inspections | | $330.00 |
| Trial Fees: Attorney's fees based upon 14 hours at $150.00 per hour | | $2,100.00 |
| Litigated Fees: Attorney's fees based upon 12.70 hours at $150.00 per hour | | $1,905.00 |
| Additional Attorney's Fees | | $1,000.00 |
| Attorney's Fee – Flat Rate | | $2,800.00 |
| TOTAL SUM | | $230,861.11 |

Declaration Exhibit C

4.    The total sum in paragraph 3 will bear interest at the prevailing statutory interest rate of 4.75% percent per year from this date through December 31 of this current year.  Thereafter, on January 1 of each succeeding year until the judgment is paid, the interest rate will adjust annually in accordance with section 55.03, Florida Statutes.

5.    Plaintiff, whose address is 5024 Parkway Plaza - Building 7, Charlotte, North Carolina 28217-1962, holds a lien for the total sum specified in paragraph 3 herein. The lien of the Plaintiff is superior in dignity to all rights, titles, interests, or claims of the Defendant(s) and all persons, corporations, or other entities claiming by, through, or under the Defendant(s), or any of them and the property will be sold free and clear of all claims of the Defendant(s), with the exception of any assessments that are superior pursuant to sections 718.116 and 720.3085, Florida Statutes, or ___

_____
(describe other surviving lien). The Plaintiff lien encumbers the subject property located in PINELLAS County, Florida, and described as:

**LOT 20, GREENHAVEN UNIT FOUR, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 107, PAGE 13-15, OF THE PUBLIC RECORDS OF PINELLAS COUNTY, FLORIDA.**
**TAX FOLIO #: 10-28-16-33313-000-0020**

**PROPERTY ADDRESS: 1455 WHISPERWIND LANE, OLDSMAR, FL 34677**

6.    If the total sum with interest at the rate described in paragraph 4 and all costs accrued subsequent to this judgment are not paid, the Clerk of Circuit Court shall sell the subject property at public sale on ___December 28, 2015___ *(date)* to the highest bidder for cash, except as prescribed in Paragraph 7, in the following location *(mark applicable location)*:

☒  In an online sale at www.pinellas.realforeclose.com, beginning at 10 a.m. on the prescribed date (mark this box for all sales in Pinellas County)

after having first given notice as required by section 45.031, Florida Statutes.  Plaintiff must arrange for publication of notice of sale in accordance with chapters 45 and 702, Florida Statutes. The Plaintiff must file the original Notice of Sale and Affidavit of Proof of Publication with the Clerk no later than 24 hours prior to the sale.

Plaintiff or Plaintiff's attorney may also cancel or reschedule the sale by filing a motion with the Court in accordance with Florida Rules of Civil Procedure, Form 1.996(b) and may seek to reschedule the sale to a later date.

7.    Plaintiff shall advance all subsequent required costs of this action.  Except for the fee to the Clerk as provided in §45.035, Florida Statutes, and publishing costs supported by an affidavit, reimbursement or credit for such costs shall be by court order based upon a written motion and adjudication at a hearing with notice.  If a third party bidder is the purchaser, the third party bidder must pay the documentary stamps attached to the certificate of title in addition to the bid.

Declaration Exhibit C

8.    If the Plaintiff incurs additional expenses subsequent to the entry of this final judgment but prior to the sale date specified in paragraph 6, Plaintiff may, by written motion served on all parties and adjudication at a hearing with notice, seek to amend this final judgment to include said additional expenses.

9.    If applicable, Plaintiff, its successors or assigns, is entitled to safe harbor under F.S. 720 or 718, respectively, and as such is only responsible to pay 1% of the subject mortgage or one (1) year of regular periodic assessments, at the time Certificate of Title is issued vesting title to Plaintiff, its successors or assigns.  Plaintiff, including its successors and assigns, is not responsible for interest, late fees, collection costs or attorney's fees incurred prior to the issuance of the certificate of title.

10.    On the filing of the Certificate of Title, the Clerk shall distribute the proceeds of the sale, so far as they are sufficient, by paying:  first, all of the Plaintiff's costs; second, documentary stamps affixed to the Certificate, unless the property is purchased by a third party bidder; third, Plaintiff's attorneys' fees; fourth, the total sum due to the Plaintiff, less the items paid, plus interest at the rate prescribed in paragraph 4 from this date to the date of the sale; and by retaining any remaining amount pending further Order of this Court.

11.    On filing of the Certificate of Sale, Defendant(s) and all persons claiming under or against Defendant(s) since the filing of the Notice of Lis Pendens shall be foreclosed of all estate or claim in the property except as provided in the Protecting Tenants at Foreclosure Act of 2009 Pub. L. No. 111-22, 123 Stat. 1660, or as to claims or rights under chapter 718 or chapter 720, Florida Statutes, if any.  On filing of the Certificate of Sale, Defendant's right of redemption as provided by section 45.0315, Florida Statutes shall be terminated.

12.    The Court finds, based upon the affidavits presented and upon inquiry of counsel for the Plaintiff, that 14 hours were reasonably expended by Plaintiff's counsel and that and hourly rate of $150.00 is appropriate.  PLAINTIFF'S COUNSEL CERTIFIES THAT THE ATTORNEY FEE AWARDED DOES NOT EXCEED ITS CONTRACT FEE WITH PLAINTIFF.  The Court finds that there are no reduction or enhancement factors for consideration by the Court pursuant to *Florida Patient's Compensation v. Rowe,* 427 So. 2d 1145 (Fla. 1985).

AND

The Court finds, based upon the affidavits presented and upon inquiry of counsel for the Plaintiff, that the flat fee of $2,800.00 is reasonable and appropriate for the Plaintiff's counsel's attorney's fees.  The Court finds that there are no reasons for either reduction or enhancement pursuant to *Florida Patient's Compensation Funds v. Rowe,* 472 So. 2d 1145 (Fla. 1985), and the Court therefore has awarded reasonable attorney's fees in the amount indicated in paragraph 3 of this Judgment.

13.    IMPORTANT INFORMATION PROVIDED pursuant to section 45.031, Florida Statutes:

Declaration Exhibit C

IF THIS PROPERTY IS SOLD AT PUBLIC AUCTION, THERE MAY BE ADDITIONAL MONEY FROM THE SALE AFTER PAYMENT OF PERSONS WHO ARE ENTITLED TO BE PAID FROM THE SALE PROCEEDS PURSUANT TO THIS FINAL JUDGMENT.

IF YOU ARE A SUBORDINATE LIEN HOLDER CLAIMING A RIGHT TO FUNDS REMAINING AFTER THE SALE, YOU MUST FILE A CLAIM WITH THE CLERK NO LATER THAN 60 DAYS AFTER THE SALE. IF YOU FAIL TO FILE A CLAIM, YOU WILL NOT BE ENTITLED TO ANY REMAINING FUNDS.

If the property has qualified for the homestead tax exemption in the most recent approved tax roll, also include the following two paragraphs:

IF YOU ARE THE PROPERTY OWNER, YOU MAY CLAIM THESE FUNDS YOURSELF. YOU ARE NOT REQUIRED TO HAVE A LAWYER OR ANY OTHER REPRESENTATION AND YOU DO NOT HAVE TO ASSIGN YOUR RIGHTS TO ANYONE ELSE IN ORDER FOR YOU TO CLAIM ANY MONEY TO WHICH YOU ARE ENTITLED. PLEASE CHECK WITH EITHER THE PINELLAS CLERK OF CIRCUIT COURT AT 315 COURT STREET, CLEARWATER, FL 33756, (727) 464-7000, OR THE PASCO CLERK OF CIRCUIT COURT AT 38053 LIVE OAK AVENUE, DADE CITY, FL 33523, (352) 521-4517 OR 7530 LITTLE ROAD, NEW PORT RICHEY, FL 34654, (727) 847-8176 WITHIN TEN (10) DAYS AFTER THE SALE TO SEE IF THERE IS ADDITIONAL MONEY FROM THE FORECLOSURE SALE THAT THE CLERK HAS IN THE REGISTRY OF THE COURT.

IF YOU DECIDE TO SELL YOUR HOME OR HIRE SOMEONE TO HELP YOU CLAIM THE ADDITIONAL MONEY, YOU SHOULD READ VERY CAREFULLY ALL PAPERS YOU ARE REQUIRED TO SIGN, ASK SOMEONE ELSE, PREFERABLY AN ATTORNEY WHO IS NOT RELATED TO THE PERSON OFFERING TO HELP YOU, TO MAKE SURE THAT YOU UNDERSTAND WHAT YOU ARE SIGNING AND THAT YOU ARE NOT TRANSFERRING YOUR PROPERTY OR THE EQUITY IN YOUR PROPERTY WITHOUT THE PROPER INFORMATION.

IF YOU CANNOT AFFORD TO PAY AN ATTORNEY, YOU MAY CONTACT A LEGAL SERVICES OFFICE, SUCH AS: GULFCOAST LEGAL SERVICES, INC., 314 S. MISSOURI AVE., SUITE 109, CLEARWATER, FL 33756, (727) 443-0657 / COMMUNITY LAW PROGRAM, 501 FIRST AVE N., ROOM 519, ST. PETERSBURG, FL 33701, (727) 582-7480 / BAY AREA LEGAL SERVICE, INC., 4948 CENTRAL AVE., ST. PETERSBURG, FL 33707, (800) 625-2257 / BAY AREA LEGAL SERVICE, INC., 37718 MERIDIAN AVENUE, DADE CITY, FL 33532 (800) 625-2257 / BAY AREA LEGAL SERVICE, INC., 8406 MASSACHUSETTS AVE, STE B-2, NEW PORT RICHEY, FL 34653, (800) 625-2257 TO SEE IF YOU QUALIFY FINANCIALLY FOR THEIR SERVICES. IF THEY CANNOT ASSIST YOU, THEY MAY BE ABLE TO REFER YOU TO A LOCAL BAR REFERRAL AGENCY OR SUGGEST ANOTHER OPTION. IF YOU CHOOSE TO CONTACT ONE OF THESE SERVICES FOR ASSISTANCE, YOU SHOULD DO SO AS SOON AS POSSIBLE AFTER RECEIPT OF THIS NOTICE.

Declaration Exhibit C

14.    Only the judgment owner will be allowed to credit bid. An assignment of the Final Judgment of Foreclosure filed with the Clerk of the Circuit Court prior to the public sale will effectively transfer with it the right to credit bid at the sale. Court approval of the assignment of the final judgment is not required.

The filing of a Certificate of Sale by the Clerk gives certain property rights to the highest bidder. In order to assign those rights and have the Certificate of Title issued to a third party, the highest bidder must file a written conveyance made in accordance with section 689.01 or section 692.01, Florida Statutes, governing real estate transfers. Such conveyance must be filed with the Clerk prior to the issuance of the Certificate of Title. Neither the Court nor the Clerk will change a Certificate of Title based upon a conveyance filed after the Certificate of Title has been issued.

**15.    The United States of America shall have the right of redemption as provided in Title 28 U.S.C.A. Section 2410(c). Further, the United States of America shall not be bound the sixty (60) day time period imposed by Fla. Stat. Section 45.032 upon motions for distribution of surplus proceeds.**

**16.    The Reformation of Mortgage is prayed for in Count II of Plaintiff's Amended Complaint I GRANTED, on the grounds that there are no issues of material fact and Plaintiff is entitled to such relief as a matter of law. This Order shall express the true intent of the parties and order that the Mortgage recorded June 20, 2002 in Official Records Book 12066, Page 646, of the Public Records of Pinellas County, Florida reflect the correct and proper legal description to wit:**

> **LOT 20, GREENHAVEN UNIT FOUR, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 107, PAGE 13-15, OF THE PUBLIC RECORDS OF PINELLAS COUNTY, FLORIDA.**
>
> **TAX FOLIO #: 10-28-16-33313-000-0020**

17.    The Court retains jurisdiction of this action to enter further Orders that are proper including without limitation, Orders authorizing Writs of Possession and an award of attorney's fees, and to enter a deficiency judgment if the Defendant has not been discharged in bankruptcy.

**18.    Plaintiff waives its right to pursue a deficiency judgment in this matter as set forth in the parties' Stipulation to Consent to Entry of Judgment. Defendant, KATHLEEN ARTHUR; agrees to the entry of a final judgment in rem as also set forth in the Stipulation to Consent to Entry of Judgment, and consent to Judgment. The Court adopts, affirms and ratifies the stipulation agreement between the parties.**

**19.    _Jurisdiction in this action is retained to enter further orders that are proper including, without limitation, orders relating to supplemental proceedings to address any omitted parties who may possess an interest in the property. Jurisdiction of this action is further retained to_**

Declaration Exhibit C

*allow Plaintiff to file post-judgment motions seeking a determination on the amounts of assessments due to any Associations under §718.116 and §720.3085, Fla. Stat.*

**DONE AND ORDERED** in Clearwater, PINELLAS County, Florida, this 23 day of

July , 2015

_____
Circuit Court Judge

**Copies Furnished to:**

**ALDRIDGE | PITE, LLP**
Attorney for Plaintiff
1615 South Congress Avenue, Suite 200
Delray Beach, FL 33445
Primary E-Mail: ServiceMail@aldridgepite.com
[FAX: Aldridge Pite @1-561-392-6965]

Randall Arthur
801 Stevens Avenue
Oldsmar, FL 34677

East Lake Woodlands Community Association, Inc. F/K/A East Lake
Master Association Inc.
c/o Scannavino Inc., R.A.
720 Brooker Creek Blvd., Suite 206
Oldsmar, FL 34667

Kathleen Arthur
1455 Whisperwind Lane
Oldsmar, FL 34677
kathyarthur@yahoo.com

Kathleen Arthur
c/o Benjamin Hillard, Esq.
Benjamin Hillard, Esq.
Castle Law Group, P.A.
13143 66th Street North
Largo, FL 33773
Email: eservicecastle@gmail.com

Declaration Exhibit C

AmSouth Bank
c/o Candace M. Garrido, Esq.
GARRIDO & RUNDQUIST, P.A.
2800 Ponce de Leon Blvd., Suite 190
Coral Gables, FL 33134
cary@garridorundquist.com

United States of America
c/o Colleen Murphy Davis, Esq.
Assistant United States Attorney
400 North Tampa Street
Tampa, FL 33602
Email: USAFLM.State.Foreclosures@usdoj.gov

Greenhaven Unit Four Association, Inc.;
and Greenhaven Unit Three Homeowners Association, Inc.
c/o David Befeler, Esq.
Mankin Law Group
2535 Landmark Drive, Suite 212
Clearwater, FL 33761
Email: service@mankinlawgroup.com

Declaration Exhibit C

I#: 2015213176 BK: 18866 PG: 860, 07/28/2015 at 02:29 PM, RECORDING 8 KEN
BURKE, CLERK OF COURT AND COMPTROLLER PINELLAS COUNTY, FL BY DEPUTY CLERK:
CLKPR14

Case 8:15-bk-12503-CPM Doc 63 Filed 08/01/16 Page 39 of 50



IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL
CIRCUIT
IN AND FOR PINELLAS COUNTY, FLORIDA

CASE NO.: 13-011340-CI
REF #:

WELLS FARGO BANK, N.A,
Plaintiff,

VS.

RANDALL ARTHUR; KATHLEEN
ARTHUR; AMSOUTH BANK; UNITED
STATES OF AMERICA; GREENHAVEN
UNIT FOUR ASSOCIATION, INC.;
GREENHAVEN UNIT THREE
HOMEOWNERS ASSOCIATION, INC.;
EAST LAKE WOODLANDS
COMMUNITY ASSOCIATION, INC.
F/K/A EAST LAKE MASTER
ASSOCIATION, INC.; ANY AND ALL
UNKNOWN PARTIES CLAIMING BY,
THROUGH, UNDER AND AGAINST THE
HEREIN NAMED INDIVIDUAL
DEFENDANT(S) WHO ARE NOT
KNOWN TO BE DEAD OR ALIVE,
WHETHER SAID UNKNOWN PARTIES
MAY CLAIM AN INTEREST AS
SPOUSES, HEIRS, DEVISEES,
GRANTEES, OR OTHER CLAIMANTS,
Defendant(s).

_____/

## UNIFORM FINAL JUDGMENT OF FORECLOSURE

**THIS MATTER** was heard before the Court at Non-Jury Trial on July 23, 2015. After consideration of all evidence presented, this Court rules as follows:

**IT IS ADJUDGED** that:

1. Plaintiff has submitted a Certificate of Compliance with Foreclosure Procedures in compliance with Administrative Orders 2013-026 and 2014-049 or any subsequent Administrative Order.

2. VALUE OF CLAIM: At the initiation of this action, in accordance with section 28.241(1)(a)2.b., Florida Statutes, Plaintiff estimated the amount in controversy of the claim to be $165,785.78. In accordance with section 28.241(1)(a)2.c., Florida Statutes, the Court identifies the actual value of the claim to be $230,861.11, as set forth below. For any difference

Motion Exhibit A

between the estimated amount in controversy and the actual value of the claim that requires the filing fee to be adjusted, the Clerk shall adjust the filing fee. In determining whether the filing fee needs to be adjusted, the following graduated filing fee scale in section 28.241(1)(a)2,d., Florida Statutes, controls:

| | |
|---|---|
| $400 | Value of claim less than or equal to $50,000 with 5 defendants or less |
| $905 | Value of claim greater than $50,000 but less than $250,000 with 5 defendants or less |
| $1,905 | Value of claim $250,000 or greater with 5 defendants or less |

If an excess filing fee was paid, the Clerk shall provide a refund of the excess fee. If an additional filing fee is owed, the Plaintiff shall pay the additional fee at least 24 hours prior to the judicial sale. If any additional filing fee owed is not paid prior to the judicial sale, the Clerk shall cancel the judicial sale without further order of the Court.

3.      The following amounts are due and owed to the Plaintiff:

| | | |
|---|---|---|
| Principal due on the note secured by the mortgage foreclosed: | | $160,569.79 |
| Interest on the note and mortgage from 2/15/2013 to 7/23/2015 | | $20,815.32 |
| Late charges | | $110.58 |
| Escrow advances | | $38,242.12 |
| Title search expenses | | $400.00 |
| Court costs: | | $2,588.30 |
| Complaint Filing Fee | $905.00 | |
| LP | $5.00 | |
| Additional LP | $1.00 | |
| Over 5 Defendants | $12.50 | |
| e-Filing Fee 12/10/13 | $3.00 | |
| Summons | $70.00 | |
| Service of Process 2/3/14 | $801.30 | |
| Service of Process 2/9/15 | $110.00 | |
| Mediation | $650.00 | |
| Amended Summons | $27.50 | |
| e-Filing Fee 1/26/15 | $3.00 | |
| Property Inspections | | $330.00 |
| Trial Fees: Attorney's fees based upon 14 hours at $150.00 per hour | | $2,100.00 |
| Litigated Fees: Attorney's fees based upon 12.70 hours at $150.00 per hour | | $1,905.00 |
| Additional Attorney's Fees | | $1,000.00 |
| Attorney's Fee – Flat Rate | | $2,800.00 |
| TOTAL SUM | | $230,861.11 |

Motion Exhibit A

4.      The total sum in paragraph 3 will bear interest at the prevailing statutory interest rate of <u>4.75%</u> percent per year from this date through December 31 of this current year. Thereafter, on January 1 of each succeeding year until the judgment is paid, the interest rate will adjust annually in accordance with section 55.03, Florida Statutes.

5.      Plaintiff, whose address is 5024 Parkway Plaza - Building 7, Charlotte, North Carolina 28217-1962, holds a lien for the total sum specified in paragraph 3 herein. The lien of the Plaintiff is superior in dignity to all rights, titles, interests, or claims of the Defendant(s) and all persons, corporations, or other entities claiming by, through, or under the Defendant(s), or any of them and the property will be sold free and clear of all claims of the Defendant(s), with the exception of any assessments that are superior pursuant to sections 718.116 and 720.3085, Florida Statutes, or ___

_____
(describe other surviving lien). The Plaintiff lien encumbers the subject property located in PINELLAS County, Florida, and described as:

**LOT 20, GREENHAVEN UNIT FOUR, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 107, PAGE 13-15, OF THE PUBLIC RECORDS OF PINELLAS COUNTY, FLORIDA.**
**TAX FOLIO #: 10-28-16-33313-000-0020**

**PROPERTY ADDRESS: 1455 WHISPERWIND LANE, OLDSMAR, FL 34677**

6.      If the total sum with interest at the rate described in paragraph 4 and all costs accrued subsequent to this judgment are not paid, the Clerk of Circuit Court shall sell the subject property at public sale on ___December 28, 2015___ *(date)* to the highest bidder for cash, except as prescribed in Paragraph 7, in the following location *(mark applicable location)*:

  ☒ In an online sale at www.pinellas.realforeclose.com, beginning at 10 a.m. on the prescribed date *(mark this box for all sales in Pinellas County)*

after having first given notice as required by section 45.031, Florida Statutes. Plaintiff must arrange for publication of notice of sale in accordance with chapters 45 and 702, Florida Statutes. The Plaintiff must file the original Notice of Sale and Affidavit of Proof of Publication with the Clerk no later than 24 hours prior to the sale.

        Plaintiff or Plaintiff's attorney may also cancel or reschedule the sale by filing a motion with the Court in accordance with Florida Rules of Civil Procedure, Form 1.996(b) and may seek to reschedule the sale to a later date.

7.      Plaintiff shall advance all subsequent required costs of this action. Except for the fee to the Clerk as provided in §45.035, Florida Statutes, and publishing costs supported by an affidavit, reimbursement or credit for such costs shall be by court order based upon a written motion and adjudication at a hearing with notice. If a third party bidder is the purchaser, the third party bidder must pay the documentary stamps attached to the certificate of title in addition to the bid.

Motion Exhibit A

8.     If the Plaintiff incurs additional expenses subsequent to the entry of this final judgment but prior to the sale date specified in paragraph 6, Plaintiff may, by written motion served on all parties and adjudication at a hearing with notice, seek to amend this final judgment to include said additional expenses.

9.     If applicable, Plaintiff, its successors or assigns, is entitled to safe harbor under F.S. 720 or 718, respectively, and as such is only responsible to pay 1% of the subject mortgage or one (1) year of regular periodic assessments, at the time Certificate of Title is issued vesting title to Plaintiff, its successors or assigns. Plaintiff, including its successors and assigns, is not responsible for interest, late fees, collection costs or attorney's fees incurred prior to the issuance of the certificate of title.

10.    On the filing of the Certificate of Title, the Clerk shall distribute the proceeds of the sale, so far as they are sufficient, by paying: first, all of the Plaintiff's costs; second, documentary stamps affixed to the Certificate, unless the property is purchased by a third party bidder; third, Plaintiff's attorneys' fees; fourth, the total sum due to the Plaintiff, less the items paid, plus interest at the rate prescribed in paragraph 4 from this date to the date of the sale; and by retaining any remaining amount pending further Order of this Court.

11.    On filing of the Certificate of Sale, Defendant(s) and all persons claiming under or against Defendant(s) since the filing of the Notice of Lis Pendens shall be foreclosed of all estate or claim in the property except as provided in the Protecting Tenants at Foreclosure Act of 2009 Pub. L. No. 111-22, 123 Stat. 1660; or as to claims or rights under chapter 718 or chapter 720, Florida Statutes, if any. On filing of the Certificate of Sale, Defendant's right of redemption as provided by section 45.0315, Florida Statutes shall be terminated.

12.    The Court finds, based upon the affidavits presented and upon inquiry of counsel for the Plaintiff, that 14 hours were reasonably expended by Plaintiff's counsel and that and hourly rate of $150.00 is appropriate. PLAINTIFF'S COUNSEL CERTIFIES THAT THE ATTORNEY FEE AWARDED DOES NOT EXCEED ITS CONTRACT FEE WITH PLAINTIFF. The Court finds that there are no reduction or enhancement factors for consideration by the Court pursuant to *Florida Patient's Compensation v. Rowe,* 427 So. 2d 1145 (Fla. 1985).

AND

      The Court finds, based upon the affidavits presented and upon inquiry of counsel for the Plaintiff, that the flat fee of $2,800.00 is reasonable and appropriate for the Plaintiff's counsel's attorney's fees. The Court finds that there are no reasons for either reduction or enhancement pursuant to *Florida Patient's Compensation Funds v. Rowe,* 472 So. 2d 1145 (Fla. 1985), and the Court therefore has awarded reasonable attorney's fees in the amount indicated in paragraph 3 of this Judgment.

13.    IMPORTANT INFORMATION PROVIDED pursuant to section 45.031, Florida Statutes:

Motion Exhibit A

IF THIS PROPERTY IS SOLD AT PUBLIC AUCTION, THERE MAY BE ADDITIONAL MONEY FROM THE SALE AFTER PAYMENT OF PERSONS WHO ARE ENTITLED TO BE PAID FROM THE SALE PROCEEDS PURSUANT TO THIS FINAL JUDGMENT.

IF YOU ARE A SUBORDINATE LIEN HOLDER CLAIMING A RIGHT TO FUNDS REMAINING AFTER THE SALE, YOU MUST FILE A CLAIM WITH THE CLERK NO LATER THAN 60 DAYS AFTER THE SALE. IF YOU FAIL TO FILE A CLAIM, YOU WILL NOT BE ENTITLED TO ANY REMAINING FUNDS.

If the property has qualified for the homestead tax exemption in the most recent approved tax roll, also include the following two paragraphs:

IF YOU ARE THE PROPERTY OWNER, YOU MAY CLAIM THESE FUNDS YOURSELF. YOU ARE NOT REQUIRED TO HAVE A LAWYER OR ANY OTHER REPRESENTATION AND YOU DO NOT HAVE TO ASSIGN YOUR RIGHTS TO ANYONE ELSE IN ORDER FOR YOU TO CLAIM ANY MONEY TO WHICH YOU ARE ENTITLED. PLEASE CHECK WITH EITHER THE PINELLAS CLERK OF CIRCUIT COURT AT 315 COURT STREET, CLEARWATER, FL 33756, (727) 464-7000, OR THE PASCO CLERK OF CIRCUIT COURT AT 38053 LIVE OAK AVENUE, DADE CITY, FL 33523, (352) 521-4517 OR 7530 LITTLE ROAD, NEW PORT RICHEY, FL 34654, (727) 847-8176 WITHIN TEN (10) DAYS AFTER THE SALE TO SEE IF THERE IS ADDITIONAL MONEY FROM THE FORECLOSURE SALE THAT THE CLERK HAS IN THE REGISTRY OF THE COURT.

IF YOU DECIDE TO SELL YOUR HOME OR HIRE SOMEONE TO HELP YOU CLAIM THE ADDITIONAL MONEY, YOU SHOULD READ VERY CAREFULLY ALL PAPERS YOU ARE REQUIRED TO SIGN, ASK SOMEONE ELSE, PREFERABLY AN ATTORNEY WHO IS NOT RELATED TO THE PERSON OFFERING TO HELP YOU, TO MAKE SURE THAT YOU UNDERSTAND WHAT YOU ARE SIGNING AND THAT YOU ARE NOT TRANSFERRING YOUR PROPERTY OR THE EQUITY IN YOUR PROPERTY WITHOUT THE PROPER INFORMATION.

IF YOU CANNOT AFFORD TO PAY AN ATTORNEY, YOU MAY CONTACT A LEGAL SERVICES OFFICE, SUCH AS: GULFCOAST LEGAL SERVICES, INC., 314 S. MISSOURI AVE., SUITE 109, CLEARWATER, FL 33756, (727) 443-0657 / COMMUNITY LAW PROGRAM, 501 FIRST AVE N., ROOM 519, ST. PETERSBURG, FL 33701, (727) 582-7480 / BAY AREA LEGAL SERVICE, INC., 4948 CENTRAL AVE., ST. PETERSBURG, FL 33707, (800) 625-2257 / BAY AREA LEGAL SERVICE, INC., 37718 MERIDIAN AVENUE, DADE CITY, FL 33532 (800) 625-2257 / BAY AREA LEGAL SERVICE, INC., 8406 MASSACHUSETTS AVE, STE B-2, NEW PORT RICHEY, FL 34653, (800) 625-2257 TO SEE IF YOU QUALIFY FINANCIALLY FOR THEIR SERVICES. IF THEY CANNOT ASSIST YOU, THEY MAY BE ABLE TO REFER YOU TO A LOCAL BAR REFERRAL AGENCY OR SUGGEST ANOTHER OPTION. IF YOU CHOOSE TO CONTACT ONE OF THESE SERVICES FOR ASSISTANCE, YOU SHOULD DO SO AS SOON AS POSSIBLE AFTER RECEIPT OF THIS NOTICE.

Motion Exhibit A

14.     Only the judgment owner will be allowed to credit bid. An assignment of the Final Judgment of Foreclosure filed with the Clerk of the Circuit Court prior to the public sale will effectively transfer with it the right to credit bid at the sale. Court approval of the assignment of the final judgment is not required.

The filing of a Certificate of Sale by the Clerk gives certain property rights to the highest bidder. In order to assign those rights and have the Certificate of Title issued to a third party, the highest bidder must file a written conveyance made in accordance with section 689.01 or section 692.01, Florida Statutes, governing real estate transfers. Such conveyance must be filed with the Clerk prior to the issuance of the Certificate of Title. Neither the Court nor the Clerk will change a Certificate of Title based upon a conveyance filed after the Certificate of Title has been issued.

**15.     The United States of America shall have the right of redemption as provided in Title 28 U.S.C.A. Section 2410(c). Further, the United States of America shall not be bound the sixty (60) day time period imposed by Fla. Stat. Section 45.032 upon motions for distribution of surplus proceeds.**

**16.     The Reformation of Mortgage is prayed for in Count II of Plaintiff's Amended Complaint I GRANTED, on the grounds that there are no issues of material fact and Plaintiff is entitled to such relief as a matter of law. This Order shall express the true intent of the parties and order that the Mortgage recorded June 20, 2002 in Official Records Book 12066, Page 646, of the Public Records of Pinellas County, Florida reflect the correct and proper legal description to wit:**

**LOT 20, GREENHAVEN UNIT FOUR, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 107, PAGE 13-15, OF THE PUBLIC RECORDS OF PINELLAS COUNTY, FLORIDA.**

**TAX FOLIO #: 10-28-16-33313-000-0020**

17.     The Court retains jurisdiction of this action to enter further Orders that are proper including without limitation, Orders authorizing Writs of Possession and an award of attorney's fees, and to enter a deficiency judgment if the Defendant has not been discharged in bankruptcy.

**18.     Plaintiff waives its right to pursue a deficiency judgment in this matter as set forth in the parties' Stipulation to Consent to Entry of Judgment. Defendant, KATHLEEN ARTHUR; agrees to the entry of a final judgment in rem as also set forth in the Stipulation to Consent to Entry of Judgment, and consent to Judgment. The Court adopts, affirms and ratifies the stipulation agreement between the parties.**

**19.     _Jurisdiction in this action is retained to enter further orders that are proper including, without limitation, orders relating to supplemental proceedings to address any omitted parties who may possess an interest in the property. Jurisdiction of this action is further retained to_**

Motion Exhibit A

*allow Plaintiff to file post-judgment motions seeking a determination on the amounts of assessments due to any Associations under §718.116 and §720.3085, Fla. Stat.*

**DONE AND ORDERED** in Clearwater, PINELLAS County, Florida, this 23 day of July, 2015

_____
Circuit Court Judge

**Copies Furnished to:**

**ALDRIDGE | PITE, LLP**
Attorney for Plaintiff
1615 South Congress Avenue, Suite 200
Delray Beach, FL 33445
Primary E-Mail: ServiceMail@aldridgepite.com
[FAX: Aldridge Pite @1-561-392-6965]

Randall Arthur
801 Stevens Avenue
Oldsmar, FL 34677

East Lake Woodlands Community Association, Inc. F/K/A East Lake
Master Association Inc.
c/o Scannavino Inc., R.A.
720 Brooker Creek Blvd., Suite 206
Oldsmar, FL 34667

Kathleen Arthur
1455 Whisperwind Lane
Oldsmar, FL 34677
kathyarthur@yahoo.com

Kathleen Arthur
c/o Benjamin Hillard, Esq.
Benjamin Hillard, Esq.
Castle Law Group, P.A.
13143 66th Street North
Largo, FL 33773
Email: eservicecastle@gmail.com

Motion Exhibit A

AmSouth Bank
c/o Candace M. Garrido, Esq.
GARRIDO & RUNDQUIST, P.A.
2800 Ponce de Leon Blvd., Suite 190
Coral Gables, FL 33134
cary@garridorundquist.com

United States of America
c/o Colleen Murphy Davis, Esq.
Assistant United States Attorney
400 North Tampa Street
Tampa, FL 33602
Email: USAFLM:State.Foreclosures@usdoj.gov

Greenhaven Unit Four Association, Inc.;
and Greenhaven Unit Three Homeowners Association, Inc.
c/o David Befeler, Esq.
Mankin Law Group
2535 Landmark Drive, Suite 212
Clearwater, FL 33761
Email: service@mankinlawgroup.com

Motion Exhibit A

Interactive Map of this parcel  Sales Query  Back to Query Results  New Search  Tax Collector Home Page  Contact Us  WM

# 10-28-16-33313-000-0200

## Compact Property Record Card

Portability
Calculator

## Data Current as of May 10,2016

Email  Print  Radius Search

Improvement Value per F.S. 553.844



| Ownership/Mailing Address Change Mailing Address | Site Address |
|---|---|
| GLENN, KATHLEEN S 1455 WHISPER WIND LN OLDSMAR FL 34677-5131 | 1455 WHISPER WIND LN (Unincorporated) |

Property Use: 0110 (Single Family Home)

Living Units: 1

[click here to hide] **Legal Description**
GREENHAVEN UNIT-FOUR LOT 20

| Mortgage Letter    🔒 File for Homestead Exemption | 2016 Parcel Use |
|---|---|

| Exemption | 2015 | 2016 |  |
|---|---|---|---|
| Homestead: | Yes | Yes | Homestead Use Percentage:  100.00% |
| Government: | No | No | Non-Homestead Use Percentage:  0.00% |
| Institutional: | No | No | Classified Agricultural: No |
| Historic: | No | No |  |

## Parcel Information  Latest Notice of Proposed Property Taxes (TRIM Notice)

| Most Recent Recording | Sales Comparison | Census Tract | Evacuation Zone (NOT the same as a FEMA Flood Zone) | Plat Book/Page |
|---|---|---|---|---|
| 18665/2498 📄 | $407,500 Sales Query | 121030273251 | C | 107/013 |

### 2015 Interim Value Information

| Year | Just/Market Value | Assessed Value/ SOH Cap | County Taxable Value | School Taxable Value | Municipal Taxable Value |
|---|---|---|---|---|---|
| 2015 | $342,965 | $289,828 | $239,828 | $264,828 | $239,828 |

### [click here to hide] Value History as Certified (yellow indicates correction on file)

| Year | Homestead Exemption | Just/Market Value | Assessed Value/ SOH Cap | County Taxable Value | School Taxable Value | Municipal Taxable Value |
|---|---|---|---|---|---|---|
| 2015 | Yes | $342,965 | $289,828 | $239,828 | $264,828 | $239,828 |

Motion Exhibit B

| 2014 | Yes | $316,706 | $287,528 | $237,528 | $262,528 | $237,528 |
| 2013 | Yes | $287,914 | $283,279 | $233,279 | $258,279 | $233,279 |
| 2012 | Yes | $284,540 | $278,544 | $228,544 | $253,544 | $228,544 |
| 2011 | Yes | $299,087 | $270,431 | $220,431 | $245,431 | $220,431 |
| 2010 | Yes | $266,434 | $266,434 | $216,434 | $241,434 | $216,434 |
| 2009 | Yes | $334,926 | $334,926 | $284,926 | $309,926 | $284,926 |
| 2008 | Yes | $379,100 | $335,796 | $285,796 | $310,796 | $285,796 |
| 2007 | Yes | $433,600 | $326,016 | $301,016 | N/A | $301,016 |
| 2006 | Yes | $421,900 | $318,064 | $293,064 | N/A | $293,064 |
| 2005 | Yes | $364,400 | $308,800 | $283,800 | N/A | $283,800 |
| 2004 | Yes | $325,600 | $299,800 | $274,800 | N/A | $274,800 |
| 2003 | Yes | $294,200 | $294,200 | $269,200 | N/A | $269,200 |
| 2002 | Yes | $302,600 | $297,500 | $272,500 | N/A | $272,500 |
| 2001 | Yes | $292,900 | $292,900 | $267,900 | N/A | $267,900 |
| 2000 | No | $254,100 | $254,100 | $254,100 | N/A | $254,100 |
| 1999 | Yes | $229,800 | $205,700 | $180,700 | N/A | $180,700 |
| 1998 | Yes | $204,900 | $183,900 | $158,900 | N/A | $158,900 |
| 1997 | Yes | $197,200 | $180,900 | $155,900 | N/A | $155,900 |
| 1996 | Yes | $188,900 | $175,700 | $150,700 | N/A | $150,700 |

### 2015 Tax Information

Click Here for 2015 Tax Bill          Tax District:
Tax Collector Mails 2015 Tax Bills October 31          ETF

| 2015 Final Millage Rate | 20.5676 |
| 2015 Est Taxes w/o Cap or Exemptions | $7,053.97 |

**A significant change in taxable value may occur when sold due to changes in the market or the removal of exemptions. Click here for more information.**

### Ranked Sales (What are Ranked Sales?)  See all transactions

| Sale Date | Book/Page | Price | Q/U | V/I |
|---|---|---|---|---|
| 24 Nov 1999 | 10735 / 1228 | $294,000 | Q | I |
| 09 Nov 1992 | 08085 / 1330 | $207,600 | Q | I |
| 04 Mar 1992 | 07832 / 1363 | $50,000 | Q | V |

### 2015 Land Information

Seawall: No          Frontage: None          View:

| Land Use | Land Size | Unit Value | Units | Total Adjustments | Adjusted Value | Method |
|---|---|---|---|---|---|---|
| Single Family (01) | 106x158 | 63000.00 | 1.0000 | 1.2000 | $75,600 | LT |

### [click here to hide] 2015 Building 1 Structural Elements Back to Top
Site Address: 1455 WHISPER WIND LN

Quality: Above Average

Square Footage: 4544.00

Foundation: Continuous Footing

Motion Exhibit B

Floor System: Slab On Grade

Exterior Wall: Cb Stucco/Cb Reclad

Roof Frame: Gable Or Hip

Roof Cover: Concrete Tile Avg Meta

Stories: 2

Living units: 1

Floor Finish: Carpet/Hardtile/Hardwood

Interior Finish: Upgrade

Fixtures: 12

Year Built: 1992

Effective Age: 23

Heating: Central Duct

Cooling: Cooling (Central)



Open plot in New Window

## Building 1 Sub Area Information

| Description | Living Area Ft$^2$ | Gross Area Ft$^2$ | Factor |
|---|---|---|---|
| Upper Story | 1,586 | 1,586 | 0.90 |
| Open Porch | 0 | 702 | 0.20 |
| Garage | 0 | 616 | 0.35 |
| Base | 1,640 | 1,640 | 1.00 |
| | Total Living SF: **3,226** | Total Gross SF: **4,544** | Total Effec |

### [click here to hide] 2015 Extra Features

| Description | Value/Unit | Units | Total Value as New | Depreciated |
|---|---|---|---|---|
| PATIO/DECK | $12.00 | 100.00 | $1,200.00 | $6 |
| SPA/JAC/HT | $8,000.00 | 1.00 | $8,000.00 | $4,3 |
| ENCLOSURE | $5.00 | 1,660.00 | $8,300.00 | $4,4 |
| POOL | $32,000.00 | 1.00 | $32,000.00 | $17,2 |
| FIREPLACE | $8,500.00 | 1.00 | $8,500.00 | $4,9 |
| PATIO/DECK | $30.00 | 240.00 | $7,200.00 | $3,0 |
| GAZEBO | $50.00 | 100.00 | $5,000.00 | $3,2 |

### [click here to hide] Permit Data

Permit information is received from the County and Cities. This data may be incomplete and may exclude permits that do not result in field reviews (for example for water heater replacement permits). We are required to list all improvements, which may include unpermitted construction. Any questions regarding permits, or the status of non-permitted improvements, should be directed to the permitting office in which the structure is located.

| Permit Number | Description | Issue Date | Estimated Value |
|---|---|---|---|

Motion Exhibit B

| | | | |
|---|---|---|---|
| CB174389 | ENCLOSURE | 17 Mar 1998 | $2,400 |
| CB172873 | POOL | 19 Feb 1998 | $21,000 |

Interactive Map of this parcel    Map    Sales    Back to Query    New    Tax Collector Home    Contact
Legend                                             Query   Results          Search   Page                        Us

Motion Exhibit B